**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 26-21974-CV-WILLIAMS**

JOSE MARIO GARCIA VALDES,

      Petitioner,

v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,

      Respondent.

_____/

## ORDER

**THIS MATTER** is before the Court following the April 2, 2026, Show Cause Hearing ("***Show Cause Hearing***"). (DE 12). On March 27, 2026, the Court ordered U.S. Immigration and Customs Enforcement (*"**Respondent**"* or "***ICE***") to show cause why Petitioner Jose Mario Garcia Valdes ("***Petitioner***") should not be released and further ordered that Petitioner should not be removed or transferred "from the Facility without prior order from the Court permitting them to do so." (DE 8 at 2). In response, Respondent indicated that Petitioner had been removed from the United States, "and he is therefore no longer in Respondent's custody." (DE 9 ¶ 2). As detailed below, the Court held a status conference on April 1, 2026, and a Show Cause Hearing on April 2, 2026. (DE 10; DE 12). This Order follows.

**I.    BACKGROUND**

The relevant facts are set forth below:

***A.    Petitioner's Detention History.***

- On December 28, 1995, Petitioner entered the United States.  (DE 9-1 at

1).   At some point, Petitioner was taken into immigration custody and subsequently released. (*Id*.) As a condition of his release, Petitioner reported regularly to the Miramar ICE office. (DE 1 at 6).

- On November 20, 2025, at 1100 EST, Petitioner was booked into Krome North Service Processing Center ("***Krome***")[1], and then taken to Florida Kendall Hospital.  On that same date, at 1200 EST, Petitioner was booked out of Florida Kendall Hospital and booked into Krome at 1525 EST.  (*Id*.)

- On December 9, 2025, at 1600 EST, Petitioner was booked out of Krome and then rebooked into Krome at 1653 EST.  (*Id*.)

- On December 16, 2025, at 1040 EST, Petitioner was booked out of Krome and booked into West Kendall Baptist Hospital at 1120 EST.  (*Id*.)  On that same date, Petitioner was booked out of West Kendall Baptist Hospital at 1412 EST and booked back into Krome at 1512 EST.  (*Id*.)

- On February 7, 2026, at 2038 EST, Petitioner was booked out of Krome. On that same date, at 2039 hours CST[2], Petitioner was booked into the Port Isabel Special Processing Center ("***Port Isabel***"), a processing center located 22 hours away in Texas.[3]

---

[1] Krome is located in Miami, Florida.  *See* U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, https://www.ice.gov/detain/detention-facilities/krome-north-service-processing-center (last visited April 16, 2026).

[2] Central Standard Time (CST) is one hour behind Eastern Standard Time (EST).

[3] Port Isabel is located in Los Fresnos, Texas. *See* U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, https://www.ice.gov/detain/detention-facilities/port-isabel-service-processing-center (last visited April 16, 2026).

- On February 9, 2026, at 1800 CST, Petitioner was booked out of Port Isabel. (*Id.*)

- On February 9, 2026, at 1832 CST, Petitioner was booked into the El Valle Detention Facility ("*El Valle*").[4] (*Id.*)

- On February 21, 2026, at 0000 CST, Petitioner was booked out of El Valle and transferred to the Florida Soft Sided Facility South ("*FSS*")[5] where he was booked into the facility at 0045 EST. (*Id.*)

- On March 24, 2026, at 1530 EST, Petitioner was booked out of FSS in Florida and, at 1532 CST, booked into the Pines Prairie ICE Processing Center ("*Pines*")[6], a processing center located 15 hours away in Louisiana. (*Id.*)

- On March 25, 2026, at 1111 CST, Petitioner was booked out of Pines. (*Id.*) A few hours later, at 1934 CST, Petitioner was booked into Port Isabel.

- On March 27, 2026, at 0756[7] CST, Petitioner was booked out of Port Isabel and "Removed." (*Id.*)

---

[4] El Valle is located in Raymondville, Texas. *See* U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, https://www.ice.gov/detain/detention-facilities/el-valle-detention-facility (last visited April 16, 2026).

[5] FSS is located in Ochopee, Florida. *See* U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, https://www.ice.gov/detain/detention-facilities/florida-soft-sided-facility-south (last visited April 16, 2026).

[6] Pines is located in Pine Prairie, Louisiana. *See* U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, https://www.ice.gov/detain/detention-facilities/pine-prairie-ice-processing-center (last visited April 16, 2026).

[7] At the Show Cause Hearing, Respondent explained that although Petitioner's detention history shows 0756, Petitioner was removed at 8:56 a.m. EST. (DE 9-2).

### B.    Petitioner's Habeas Corpus Petition.

On March 19, 2026, under the mailbox rule, Petitioner signed his petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2241 ("**Petition**").  (DE 1 at 9). The envelope containing the Petition reveals it was file stamped in St. Petersburg, Florida at 6:00 p.m. on March 21, 2026.  (DE 1 at 11). On March 24, 2026, the Petition was received by the Clerk of Court but was not opened and assigned to the Undersigned until 8:57 a.m. on March 25, 2026.

On March 27, 2026, at 7:58 a.m., Respondent filed a Motion to Change Venue ("**Venue Motion**"), seeking transfer of the Petition to the Middle District of Florida.  (DE 4).  Notably, although Petitioner's detention history shows that he was in Texas on March 27, 2026, Respondent represented in its Venue Motion that Petitioner "is currently detained" at the Florida Soft-Sided Facility-South.  (*Id.* at 2).  On that same day at 3:34 p.m., after receipt of Respondent's Venue Motion, the Court entered multiple Orders, including an Order to Show Cause ("**Show Cause Order**") (DE 8), requiring Respondent to address where Petitioner was first detained.  (*Id.* at 2.)  Respondent was also instructed that Petitioner *shall not* be removed from FSS without prior order from the Court.  (*Id.*)

Four days later, on March 31, 2026, at 10:49 a.m., Respondent filed a "Return" ("**Response**") (DE 9) to the Petition, arguing that the case was "moot" because Petitioner had been removed *prior* to the entry of the Court's Show Cause Order.  (*Id.* at 1).  As a result, on that same day, the Court set a status conference for April 1, 2026, at 2:00 p.m. (DE 10).

### C.    April 1, 2026 Status Conference.

On April 1, 2026, a status conference was held in light of Respondent's Venue

Motion and subsequent Response ("**Status Conference**"). The AUSA who signed the two documents was unavailable due to a personal matter, so another attorney appeared on behalf of Respondent. During the Status Conference, that AUSA represented to the Court that Petitioner was removed to Mexico on March 27, 2026. The Court questioned why Respondent represented in the Venue Motion that Petitioner was presently "in custody" at FSS. The appearing AUSA stated that the assigned AUSA filed the Venue Motion based solely on Petitioner's representation that he was housed at FSS.  The Court also inquired why the Venue Motion did not inform the Court that Petitioner had already been removed from the United States; the AUSA explained that, at the time of filing, the assigned AUSA was unaware of Petitioner's removal. At the conclusion of the Status Conference, the Court set the matter for a "show cause" hearing on April 2, 2026, at 2:00 p.m., requiring the assigned AUSA to be present.  (DE 12).

### D.      April 2, 2026 Show Cause Hearing.

On April 2, 2026, the Court heard from Respondent regarding the discrepancy between the Venue Motion and Petitioner's detention history. (DE 17).  As detailed below, Respondent argued that significant time constraints and lack of readily accessible information impacted Respondent's ability to quickly and accurately apprise the Court of Petitioner's location.

## II.      DISCUSSION

At this juncture, while the conduct of the AUSA in question might not warrant sanctions, the questions of what happened to Petitioner, why he was repeatedly moved from Florida to Louisiana to Texas and back again, and how reliable ICE records are remain unanswered. What is clear, and what was declaimed throughout the hearing, is

that ICE does not make its records available to its Department of Justice attorneys to respond to court orders in a timely fashion. Accordingly, as explained below, the Undersigned will amend procedures for habeas corpus petitions filed pursuant to 28 U.S.C. § 2241 to address this deficiency. The Court will first discuss whether sanctions should be imposed based on Respondent's conduct and representations made during the Show Cause Hearing and then discuss the remedy this Court is compelled to implement.

### A. Whether sanctions should be imposed.

### 1. Rule 11 Sanctions.

The Court must determine whether an AUSA should be sanctioned for the material misrepresentation made in the Venue Motion regarding Petitioner's "current" location. (DE 4). Federal Rule of Civil Procedure 11(b) states, in relevant part: that "[b]y presenting to the Court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after **an inquiry reasonable under the circumstances**: it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation, and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b) (emphasis added). The Rule 11 certification and signature requirement "certifies to the court that the signer has read the document, **has conducted a reasonable inquiry into the facts** and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters.*, Inc., 498 U.S. 533, 542–43 (1991) (emphasis added). Indeed, the Eleventh Circuit has made clear that "Rule 11

stresses the need for some prefiling inquiry." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996).

A court determining whether Rule 11 sanctions should be imposed, "first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry." *Id*. "If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound." *Id*. "The reasonableness of inquiry may depend on such factors as how much time for investigation was available to the signer" or whether the signer depended on another member of the bar. *Id*.

Turning to the facts of this case, the Court finds Respondent's representation that Petitioner is "currently detained" in the "Middle District of Florida" to be objectively frivolous. (DE 4 at 2). The record shows that Respondent—through the assigned AUSA —filed the Venue Motion at 7:58 a.m. on March 27, 2026. (DE 4). However, according to Petitioner's detention history, Petitioner was transferred to Pine Prairie on March 24, 2026, to Port Isabel on March 25, 2026, and ultimately removed from the country on March 27, 2026, at 8:56 a.m. EST—58 minutes after the Venue Motion was filed. (DE 9-2).[8] Consequently, the undisputed facts show Petitioner was not at FSS when the Venue

---

[8] As the Court noted during the Show Cause Hearing, a cursory review of the transport times demonstrates that Respondent's information is unreliable. Even accounting for the change in time zones, a trip from Florida to Texas would take longer than the 1 hour and 1 minute reflected in Petitioner's detention history of February 7th. (DE 9-2) (noting that on Feb. 7, 2026, Petitioner left Miami, Florida at 2038 EST and arrived in Port Isabel, Texas on Feb. 7, 2026, at 2039 CST).

Motion was filed, and therefore, the representation was objectively frivolous.

As to whether the person who signed the pleadings should have been aware that the representation was frivolous, lawyers from the United States Attorney's Office gave the Court detailed recitations to explain why this was a "miscommunication" to the Court. According to them, although the Petition was filed with the Court on March 24, 2026, the case was not assigned to the AUSA in question until March 26, 2026. As a result, the assigned AUSA was not aware that ICE transferred Petitioner from FSS. They explained that, upon receipt of the Petition on March 26, the AUSA reviewed the Petition and prepared the draft Venue Motion predicated solely on the allegations apparent on the face of the Petition. After preparing the draft, the AUSA departed the office at 4:30 p.m. due to a prior family commitment. On that same day, at 5:00 p.m., an email was sent to the AUSA advising that Petitioner had been transferred from FSS. Notably, these lawyers did not explain what precipitated the sending of this particular email at this particular time, in as much as the assigned AUSA had made no independent inquiry as to Petitioner's whereabouts. In any event, the AUSA did not see the email that evening as she had left the office.

The very next day, on March 27, 2026, the AUSA reviewed the draft and submitted the Venue Motion at 7:58 a.m., prior to checking any emails, including the email that would have revealed Petitioner's transfer. It was not until after the AUSA filed the Venue Motion that she read her emails and learned that Petitioner was transferred out of FSS. Despite learning that Petitioner was no longer at FSS, four (4) days elapsed before the Court was informed of the transfer. Respondent asserted that this was because the AUSA

needed to confer and corroborate the information provided in the email.[9] Indeed, the response to the March 27, 2026 Show Cause Order, attaching Petitioner's labyrinthine detention history, informed the Court for the first time that not only was Petitioner not at FSS when the Venue Motion was filed, but he had been removed from the country. (DE 9).

The Court pressed Respondent to determine whether the AUSA would have been aware of Petitioner's actual location had she made a reasonable inquiry into the Petition's allegations. Notwithstanding the March 26th email received the evening before advising of Petitioner's transfer, Respondent outlined the significant barriers hindering its ability to quickly and accurately provide the Court with reliable information. Respondent cited the "vast overload" of habeas petitions and the limited access to information on detainees. Respondent also explained that when a petition is assigned to an AUSA, the AUSA relies solely on the petition's allegations to first determine whether there are procedural issues, such as venue. Reliance on the petition is necessary, according to Respondent, because the United States Attorney's Office does not have immediate access to a petitioner's file or ICE locator for detainees. Respondent advised the Court that it cannot access the Department of Homeland Security's information systems, making it "very difficult for the Department of Justice to give the court the most accurate information as quickly as possible." (April 2, 2026 Hrg.) Respondent cautioned that the underlying documents in an individual's "alien file" may be located in various places throughout the country, and that while ICE endeavors to gather the information upon request, the process could take

---

[9] The Court finds it telling that the assigned AUSA did not corroborate the factual assertions of the Petition but did feel it necessary to confirm and corroborate the information provided by a client agency, another Executive depeartment.

several days or several months. Indeed, although the AUSA immediately requested Petitioner's detention history, she did not receive a copy of Petitioner's location information until several days later on March 30, 2026.

While it would have been reasonable, preferable and consistent with Florida Bar Rules 4-3.1[10] and 4-1.3[11], for the AUSA to perform some due diligence before filing her motion and inquire into the March 26th email advising her of Petitioner's transfer, the Court reluctantly credits Respondent's stated belief that lawyers in the United States Attorney's Office do not have access to a readily available detainee locator or a detention history database. The Court notes—contrary to the understanding advanced by one of the lawyers for Respondent—that there is a public-facing ICE Online Detainee Locator System where users (purportedly) can find a detainee's "Current Detention Facility." *See* U.S. Immigration and Customs Enforcement, *https://locator.ice.gov/odls/#/search* (last visited April 16, 2026). Additionally, there is a toll-free service "that provides a direct channel for agency stakeholders and the public to communicate with ERO to answer questions and resolve concerns." *Id*. Stakeholders may dial 1-888-351-4024 to reach "[l]ive, trained operators . . . Monday through Friday (excluding holidays) from 8 a.m. to 8 p.m. (Eastern Time)" where representatives will "assist with resolution on subjects such as . . . [r]equests for basic case information." *Id*. Therefore, the Court remains troubled by

---

[10] FL Bar R. 4-3.1 states, in relevant part, "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law."

[11] FL Bar R. 4-1.3 states, "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

the lack of independent verification by the AUSA of what the Respondent considers dispositive facts, especially in light of Petitioner's extensive travel history while in detention.

Although the Court finds it problematic that the AUSA did not make a reasonable inquiry into the underlying facts of the matter, and did not attempt to immediately remedy the misrepresentation regarding Petitioner's location, the Court accepts Respondent's insistence that the AUSA submitted the Venue Motion in good faith and that she lacked, or was unaware of, the ability to verify the veracity of the allegations. Accordingly, the Court will not issue Rule 11 sanctions.

### 2. Contempt Sanctions.

"A finding of civil contempt must be supported by clear and convincing evidence that: 1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and 3) the alleged violator had the ability to comply with the order." *Mesa v. Luis Garcia Land Serv. Co.*, 218 F. Supp. 3d 1375, 1380 (S.D. Fla. 2016) (citing *F.T.C. v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010)). The Show Cause Order was unquestionably valid and lawful. The Show Cause Order clearly and unambiguously prohibited Respondent from removing or transferring Petitioner from FSS "without prior order from the Court permitting them to do so." (DE 8 at 2). However, despite Respondent representing on March 27, 2026, that Petitioner was "currently detained" at FSS, Respondent did not have the ability to comply with the Show Cause Order because Petitioner was transferred from FSS on March 24, 2026—six hours after the Petition was assigned to the Undersigned and three days before the Show Cause Order was effective. Therefore, the AUSA could not comply with the Order from its inception because

Petitioner was transferred before the AUSA was assigned to this case.[12] As represented by Respondent, the AUSA was "not aware or consulted" regarding Petitioner's transfer. (April 2, 2026 Hrg.). For this reason, contempt sanctions are not warranted.

### B. The Court's Remedy.

As described above, the Court was a few hours behind the final transfer when it issued the Show Cause Order, which would have prohibited Petitioner's premature removal. (DE 8).  During the Show Cause Hearing, Respondent explained that "when there is no order prohibiting transfer or deportation, ICE operations continue in effect until an order is issued." (April 2, 2026 Hrg.) According to Respondent, had the Court issued the Show Cause Order on the day the case was assigned, Respondent would have immediately provided the Order to ICE[13] and removal proceedings would have halted. In light of this assurance, and based on the robust discussion regarding Respondent's time constraints and inability to quickly verify information, *see supra* II(A), the Undersigned will implement a revised procedure.

An order will be entered immediately once a habeas petition is assigned and will prohibit transfer and removal until the Court, and government, can determine legal venue and decide whether to reach the petition's merits. More importantly, this order will give the Government five (5) days to respond, ensuring that the Government has sufficient time to investigate the underlying facts. The order will also give the Court confidence it is receiving accurate information after reasonable inquiry, all while preserving the status

---

[12] At the Show Cause Hearing, Respondent represented that the AUSA was assigned to this case at 3:50 p.m. on March 26, 2026. (April 2, 2026 Hrg.)

[13] Indeed, the Show Cause Order was immediately dispatched to ICE despite the fact that the AUSA knew Petitioner had been removed to Mexico.

quo. To that end, this procedure preserves the integrity of the process and assures the Court that the process, as described by Respondent—immediately providing the order to ICE and halting procedures—will prevent mootness while legal issues are briefed and resolved, without the need for a show cause hearing.

## III.    CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.  The Show Cause Order is **DISCHARGED**.

2.  Respondent is **DIRECTED** to promptly mail a copy of this Order to Petitioner's next of kin and file a notice of compliance on or before April 23, 2026.

3.  All deadlines and hearings are **CANCELED**.

4.  The Clerk of Court is **DIRECTED** to close this case.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 16th day of April, 2026.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**

**Jose Mario Garcia Valdes** *Pro Se*
A# 074059315
South Florida Detention Facility
54575 Tamiami Trail E.
Ochopee, FL 3414
(address of record)

**Carlos Javier Raurell, AUSA**
**Matthew James Feeley, AUSA**
**Natalie Diaz, AUSA**
United States Attorney's Office
99 NE 4 Street

Miami, FL 33132
Email: carlos.raurell@usdoj.gov
Email: natalie.diaz@usdoj.gov
Email: matthew.feeley@usdoj.gov

**Kelsi R. Romero, AUSA**
**Steven R. Petri, AUSA**
United States Attorney's Office
500 E Broward Boulevard, 7th Floor
Fort Lauderdale, FL 33301-3002
Email: Steve.Petri@usdoj.gov
Email:  Kelsi.romero@usdoj.gov